DANIEL W. BARR

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 30, 1885.*

1. CRIMINAL LAW—*assault with intent to commit rape—of the proof necessary to convict.* Before one can be convicted of an assault with intent to commit a rape, it must appear, from the evidence, that he made an unlawful assault upon the prosecutrix, with intent feloniously and forcibly to ravish and carnally know her against her will.

2. An instruction which may be held to imply that the jury may find the defendant guilty of an assault with intent to commit a rape upon a woman if he simply made an unlawful assault without such criminal intent, is positively bad, such not being the law.

3. SAME—*of an instruction on the subject—as omitting an essential element, and assuming a material fact.* On the trial of one for an assault with intent to commit a rape, the court instructed the jury as follows: "The jury are instructed, that if you believe, from the evidence, beyond a reasonable doubt, that the defendant made the assault as charged in the indictment, then, even though you believe, from the evidence, defendant afterwards held Mrs. R., * * * and they talked about S., then such subsequent talk could not justify or excuse the prior assault:" *Held,* that the instruction was erroneous. If the words, "made the assault," be referred to the words in the indictment that he made an "unlawful assault," and nothing more, it was bad, as omitting the criminal intent; and if they refer to an assault with intent to ravish, as charged, it is still more erroneous, in assuming there was a prior assault made.

4. SAME—*of matters connected with an offer of defendant to compromise.* On the trial of one for an assault with intent to commit a rape, it is proper for the prosecution to prove that the accused sent a party to the father of the prosecutrix, who was a married woman, to ascertain if the case could be compromised; but it is not proper to prove that the father said, in reply, that he had two farms, and that he would spend them both before he would compromise the case.

WRIT OF ERROR to the Circuit Court of Mason county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. H. W. MASTERS, for the plaintiff in error.

Mr. GEORGE HUNT, Attorney General, and Mr. T. N. MEHAN, State's Attorney, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Plaintiff in error was indicted at the August term, 1883, of the Mason county circuit court, for an unlawful assault upon Hester A. Rohlfing, with intent to commit a rape upon her person. There seem to have been two trials of the case in the circuit court. On the first trial the jury failed to agree upon a verdict, and were discharged; but on the second trial, which was had at the February term, 1884, of the Mason county circuit court, the accused was found guilty, and sentenced to the penitentiary for a period of three years. As it does not appear any *supersedeas* was granted in the cause, it would seem the accused is now, and has been since his conviction, in the penitentiary, under the judgment of the court.

No evidence, other than that introduced by the People, was submitted to the jury on the trial of the cause. Defendant did not testify in his own behalf, nor did he offer any testimony whatever. Before the accused could be rightfully convicted, it should appear, from the evidence, he made an unlawful assault upon the prosecuting witness, with intent, feloniously and forcibly, to ravish and carnally know her against her will. Taking the account given of the affair by the prosecuting witness as the one to be most relied on, no very severe assault was made upon her by the accused. At the time the assault was made, it appears her husband was somewhere on the farm, and was at home during the day after it occurred, and although she and her husband slept at home the night after the assault, alone, with no one in the house except their little child, she never mentioned to him the fact the accused had assaulted her. The People gave in evidence the admissions of defendant made to John Otto, from which it appears that after the accused stopped at her

house on that day, he and the prosecutrix talked about some matters relating to the possession of the farm she and her husband occupied, in which it seems a man by the name of Spilker was interested, and that he told her in the same conversation, in substance, if she would submit to his desires he would pay her for it. The conversation which the prosecuting witness herself says he had with her during the time the accused had hold of her, tends much more to show he intended to *persuade* her to submit to his guilty embrace rather than to carnally know her forcibly and against her will, which is necessary to constitute the offence with which he is charged. The intent, however, with which the unlawful assault is made in such cases is usually a question of fact for the jury to find, and with which the court seldom interferes.

But there are two reasons why it is thought the present judgment should be reversed:

*First*—It was improper for the court to permit the witness Lane to testify as to the conversation he had with John R. Tenny concerning the effort made to "compromise the case." It was proper to prove, as was done, the accused sent Tenny to Lane to ascertain if the case could be compromised, but what Lane said about having two farms, and that he would spend them both before he would "compromise the case," was not proper evidence, and may have been prejudicial to the accused.

*Second*—It was error in the court to give for the People the thirteenth instruction, which is as follows:

"The jury are instructed, that if you believe, from the evidence, beyond a reasonable doubt, that the defendant made the assault as charged in the indictment, then, even though you believe, from the evidence, defendant afterwards held Mrs. Rohlfing, * * * and they talked about Spilker, then such subsequent talk could not justify or excuse the prior assault."

It will be observed the indictment charges the accused made an "unlawful assault" upon the prosecuting witness, and then it is added: "With intent * * * feloniously and forcibly to ravish and carnally know" her "against her will." If the words used in the instruction, "made the assault," shall be referred to the averment in the indictment the accused made an "unlawful assault" upon the prosecutrix, and nothing more, then the charge of the court was positively bad, for it would seem to imply the jury might find defendant guilty if he simply made an "unlawful assault" upon her, without the criminal intent to commit a rape upon her person, which is not the law. But if the words, "as charged in the indictment," shall be understood to enlarge the meaning so that the jury should be required to believe the accused "made the assault with intent * * * feloniously and forcibly to ravish and carnally know" the prosecutrix "against her will," then the instruction is still more vicious, for it will be seen it assumes, by the phraseology employed, that "a prior assault" had been made upon her,—that is, "a prior assault" with the intent to commit a rape upon her person. This was clearly error. Certainly, if the words, "made the assault," as used in the beginning of the instruction, mean an "unlawful assault" with that criminal intent necessary to constitute the crime with which the accused is charged, then the words "prior assault," as used in the sequel of the same instruction, must mean the same thing. It was not within the rightful province of the court to assume as a fact, and so declare to the jury, a "prior assault" was made, nor with what intent it had been committed. The law has made it the duty of the jury to find such facts from the evidence, and it was error for the court to assume to interfere with the discharge of that duty.

It is fit to remark the jury must have been very much confused by the unusual number of instructions that were given on behalf of the People, and also on behalf of defendant. The facts in the case are not numerous, and as to most of

them no controversy is made. The law applicable to the case is simple, and well understood even by persons not claiming to be educated in the law, and yet the court was asked to and did give sixteen instructions for the People and twenty-six for defendant. It is quite obvious the practice of giving so many instructions tends rather to defeat than aid the administration of either the criminal or civil law.

The judgment of the circuit court will be reversed and the cause remanded.

*Judgment reversed.*