THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES E. COLLIER, Defendant-Appellant.

Second District No. 77-233

Opinion filed December 22, 1978.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

In a jury trial the defendant was found guilty of the offense of rape and was sentenced to 10-20 years in the Department of Corrections.

In this appeal the defendant has raised three issues: (1) was the evidence adduced sufficient to prove beyond a reasonable doubt that the intercourse occurred against the will of the complaining witness; (2) was it proper to introduce the alleged details of the rape complaint; (3) whether the trial court erred in refusing to modify Illinois Pattern Jury Instructions, Criminal, No. 26.01 (hereinafter IPI Criminal) by the supplement of Standard 5.4 suggested by the ABA Standards Relating To Trial By Jury.

The complaining witness was 19 years of age at the time of the incident. She worked the second shift on September 30, 1976, returned from work at approximately 12:30 a.m. and went to sleep about 2 a.m. During the night she was awakened by a man holding her down at the shoulders. She resisted, screamed, and the man then pressed an object against her ear and threatened her. He also hit her behind the ear approximately 5 times and the victim found lumps there two days later. The man then performed an act of cunnilingus on her while he held what appeared to be a screwdriver against her hip. Penetration was finally

achieved at approximately 5 to 5:30 a.m. The complainant testified that as the man turned the lighted clock-radio down she was able to see his face. He told her to look the other way, but she continued to look at him, and aided by the early morning light, discovered that she knew who he was. When the man left the complaining witness immediately went to the apartment of her neighbor, Mrs. Rivera, and complained that she had been raped. She went there because she did not have a phone to call the police. This was within 10 minutes or so after the man had left her apartment. The police were then called.

When the police arrived the witness was upset, emotional, crying and obviously jumpy when talking to the police officer. She told the officer that she had been raped and that the man who had raped her had blond hair and lived next door to the Rivera's apartment, but that she did not know his name.

A Sergeant Heine testified that he went to the defendant's apartment shortly after 5:30 in the morning, woke him up, and advised him that the complaining witness said that he had raped her. The defendant then stated: "* * * why that pig, I would never touch her." The defendant was then arrested. As the police were bringing the defendant down the stairs the complaining witness recognized him, and stated: "That's him. That's him. That's the man. There's no doubt in my mind."

Detective Mull testified that later that morning the defendant was given his *Miranda* warnings, made a statement and denied having intercourse with the complaining witness. He stated that he went home to his apartment at about 2:40 a.m. and went to bed. However, at the time of his statement the defendant asked Detective Mull whether the witness had any bruises on her. In answer to a question relative to this at trial, the defendant stated: "I was concerned if I was being charged with Rape if she had any marks on her at all."

Three days after his arrest, on October 4, the defendant told Deputy Sheriff Thiel that he had sex with this girl in Elgin and the agreement was for some money. He also told Thiel that he did not think the sex was any good so he took back the money and left.

The defendant testified in his own behalf and stated that on the night in question he had been out drinking in various bars after he had had an argument with his wife. He said that upon his return home the complaining witness called to him to come to her apartment. He then went on to testify that she wanted to borrow $40; that he gave her the $40; that he had sexual intercourse with her which she did not resist and that he then picked up the money, laughed and left. He further testified that she called him a name and stated that he would regret this. He decided to tell the truth about 4 o'clock on the afternoon of October 1 but didn't tell Deputy Thiel until three days later.

■■ The defendant argues first that the evidence was insufficient to prove, beyond a reasonable doubt, that the intercourse which occurred was against the complainant's will. We do not agree. The complainant testified that she screamed, attempted to fight the defendant off, and that he used a screwdriver in the attack upon her. The defendant testified that she voluntarily consented to the intercourse in return for a loan of $40. The discrepancy in the defendant's story is obvious. Upon two occasions after his arrest he stated that he did not have intercourse with the complainant but finally admitted it in his third statement. Without going into the details of the testimony of the parties, and the witnesses to whom the complaining witness made her complaint, it is obvious that the jury chose to believe the complaining witness from the evidence adduced rather than the conflicting statements of the defendant. It has been so frequently stated that this court will not substitute its judgment for that of the jury in such a situation that no citation is necessary.

The second argument is that it was error to allow testimony as to the details of the complaints made by the victim shortly after the rape occurred. The first testimony pointed to by the defendant was the complaining witness' statement to Mrs. Rivera. In answer to a question as to whether the complaining witness gave a description of the alleged rapist, Mrs. Rivera stated:

> "Yes, that was later on when I asked when my husband was outside, I asked her, you know, what the person looked like. And she gave me the description."

That is the substance of the details of the complaint objected to by the defendant. This statement was made a few minutes after the rape occurred. The defendant also argues that it was improper for Sergeant Heine to testify that:

> "She told me that she knew who the offender was. She knew who had raped her. * * * I proceeded to ask her who it was and she said that it was the man that lived in the upper apartment adjacent to her apartment building."

That, too, is the substance of the objection as to the details of the offense. In support of this contention the defendant maintains that these statements had a devastating effect on Collier's case. We do not agree. In *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, the supreme court discussed in detail the admission of evidence relative to a complaint made as a spontaneous declaration or as a corroborative complaint. In quoting from *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807, the supreme court stated:

> "Three factors are necessary to bring a statement within this exception of the hearsay rule: (1) an occurrence sufficiently

startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence."

All three factors are present in the case before us. The offense was startling, the time elapsed was but a few minutes after the occurrence and the statement related to the circumstances of the occurrence only in that she stated that she knew who her assailant was, though not calling him by name. See *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285.

We find that the facts here are similar to those in *People v. Kilgore* (1976), 39 Ill. App. 3d 1000, 1005, 350 N.E.2d 810, 814-15, where the court stated:

> "The event was sufficiently startling, the statements related to the circumstances of the occurrence, and there was an absence of time to fabricate. Although 20 minutes did pass between the attack and the arrival of the friend, the outburst did seem to be spontaneous. This conclusion is heightened by the apparent condition of the prosecutrix. The testimony was that she was crying very hard, and clearly distraught. The trial court did not abuse its discretion in permitting the complete testimony."

In *People v. Rotello* (1930), 339 Ill. 448, 455, 171 N.E. 540, 543, a complaining witness complained to her mother upon return to her home in the morning that she had been raped and, in answer to an inquiry, stated the name of the party who had raped her. There, as in the case before us, the testimony of the witness was that she told a Miss Welsh and her mother everything that had occurred without rehashing the details to the jury. This was not a violation of the rule which permits evidence of the complaint of the woman assaulted made immediately after the commission of the crime, and prohibits proof of any statement of the details of the offense or of the name of the person charged with committing the crime. The court pointed out in that case that the statement that the named defendant was her assailant was a violation of the rule but did no harm to the defendants, observed:

> "If a rape was committed it was committed by Rotello. He says so himself. He admits he was the person who had intercourse with the prosecuting witness. If that act constitutes rape, he was guilty of the crime."

And that is the same situation before us. In *People v. Jackson* (1971), 3 Ill. App. 3d 303, 307, 279 N.E.2d 8, 11, the court observed that:

> "The person to whom the complaint was made can properly testify to the fact that it was made, although it is not proper for such a person to give the name of the accused. [Citation.] Potocny thus properly could testify to the girl's complaint. It was error to permit

him to testify that the victim identified her assailant as 'Buddy' Jackson to the police. However, since there was no question of identity in the instant case, the defendant was not prejudiced, and the error was harmless. (See *People v. Rotello*, 339 Ill. 448, 171 N.E. 540.) The direct testimony of the victim, together with the corroboration, was sufficient to support the court's finding that defendant was guilty beyond a reasonable doubt."

We therefore find that, under *Damen*, the statements of the complaining witness to Mrs. Rivera and Sergeant Heine, which were made within minutes after the rape occurred, were spontaneous declarations and were properly admitted. However, they did not contain details of the crime, per se. The only statement made by the victim other than the fact that she was raped was that she knew who the alleged rapist was, although not identifying him by name. The statements were proper both as a simultaneous declaration and as a corroborative complaint. We find no error in this regard.

■■ Lastly, defendant complains that the trial court refused to modify IPI Criminal No. 26.01, which reads as follows:

"When you retire to the jury room you will first elect one of your members as your foreman or forelady. He or she will preside during your deliberations upon your verdict.

Your agreement upon a verdict must be unanimous. Your verdict must be in writing and signed by all of you, including your foreman or forelady.

Faithful performance by you of your duties as jurors is vital to the administration of justice.

You will be provided with two forms of verdict. When you have unanimously agreed upon your verdict you will select the form which reflect your verdict and sign it as I have stated.

The forms of verdict which you will receive read as follows."

The defendant requested that this instruction be supplemented by a length of deliberations, deadlocked jury, instruction (section 5.4 of the American Bar Association Project on Standards for Criminal Justice), which reads as follows:

"Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view of reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only

after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict."

As far as we have been able to determine such a request has not been passed upon by the courts of this State and we specifically find that IPI Criminal No. 26.01 sufficiently and adequately sets out the law of this State. In *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, the question of instruction to deadlocked juries was reached. But, neither in that case nor in any case since then, has it been held that IPI Criminal No. 26.01 should be supplemented by the addition of the proposed American Bar Association instruction prior to a jury becoming deadlocked.

■■ Lastly, it is to be pointed out that the defense counsel neither objected to the testimony of the police or Mrs. Rivera as to the victim's complaint to them, nor was this issue raised in his post-trial motion. Ordinarily objections not raised at trial or in a post-trial motion are deemed waived. However, because of the issue presented to us we have seen fit to comment upon it. As a result of the failure to object, the further contention is made, in the alternative, that the defendant was not adequately represented. The record discloses otherwise. The fact that the defense counsel did not object to the testimony in question, which we have found admissible, certainly is no indication of his incompetence. We therefore affirm.

Affirm.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.