THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BRADLEY WITTE, Defendant-Appellant.

Second District   No. 82—44

Opinion filed May 20, 1983.

LINDBERG, J., dissenting in part.

Randolph G. Cook, of Rockford, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Following a jury trial, Bradley Witte was convicted of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1) and sentenced to six years' imprisonment. He appeals, contending that he was not proved guilty beyond a reasonable doubt. Alternatively, he contends that he was denied his right to an impartial jury and that evidentiary rulings deprived him of a fair trial.

The complaining witness, Cornelia Davis, was 26 and had been acquainted with the defendant, who was 27, for a little more than a year at the time of the incident. She testified that they lived in adjoining apartment complexes on the second floor, and had dated for about two weeks at the end of June and beginning of July 1980. They had been "intimate" previously, the last time being in the fall of 1980. The defendant had terminated the relationship which, Davis said, upset her.

On Friday, May 22, 1981, the complainant went unaccompanied to a bar at approximately 10 p.m. and stayed until closing time, at about 12:30 a.m. She drank four "doubles" consisting of vodka and grapefruit juice at the bar and became intoxicated. She asked around if there was a party after closing time and met defendant, who said that he did not know of any party but that she could come over to his apartment for a while. She gave him a "short" hug and a "peck" on the cheek because they were friends. She bought a six-pack of beer

and they went to defendant's apartment.

In defendant's apartment she and the defendant sat on the couch after defendant turned on some music. He started to kiss her but she pushed him away. There was "minor" struggling which broke off when she went to the bathroom. She then went to leave, and was outside the defendant's apartment about to close the door behind her when the defendant, who had been outside relieving himself, "pushed" her back inside and told her to sit down. He forced his body onto hers, by which she meant that he was rubbing his genitals against her body. Both were then fully clothed. She struggled and screamed, at which point defendant started to hurt her by tightening his grip on her wrists. She struck defendant on his head with her fist, defendant got "very angry," flipped her over and got on top with his hands on her throat, strangling her. She pushed but could not breathe. Defendant released her throat, but started hitting her on her chest and across her face with the back of his hand, but not with his full force. He said he loved her, then said that he couldn't stand her. She was afraid the defendant would choke her again, and "was actually scared that he was going to kill" her; and "to get out of it" she went into his bedroom with him. The defendant never demanded intercourse; inside the bedroom she disrobed. She testified that they then had intercourse without her consent. Although defendant at first refused to let her go until she "begged," afterward she went into the bathroom, cried, and after a while, heard the defendant snore. She dressed quickly, leaving behind her shoes in the living room, and went to her apartment, which was one or two minutes away, where she stayed "a while." Five to ten minutes after she got to her apartment, she phoned Scott Drake, who lived upstairs with Terri Hart, and told Drake that she had been raped. Drake and Hart went downstairs to her apartment where they stayed with her the rest of the night. When they arrived, the complainant was crying, shaking violently, sometimes screaming, near shock and hysterical. She repeated that she had been raped by defendant and that she wanted to hurt him for what he had done to her. She told Hart that defendant was yelling at her "about taking speed," which she denied having taken for "months back." Hart said that the complainant could not understand defendant's accusation since he said he had taken speed earlier that day, which the complainant thought was unusual for him. She stopped the complainant from returning to the defendant's apartment with a knife. Drake called the police approximately 2½ hours after arriving.

On cross-examination she denied they fought partly because defendant accused her of taking speed. She admitted that she said on

June 12 that she didn't think that she had grounds for rape, but she thought this was because she had had intercourse with defendant before that night.

An investigating officer testified that on arriving at defendant's apartment early that morning, defendant's living room was in disarray, with a planter tipped over and dirt scattered on the carpet, and a coffee table out of position. He had some difficulty waking defendant, who appeared intoxicated.

The examining physician, Dr. Bertrund, testified that there were "significant marks" about the victim's neck, and bruises on the wrist and one knee. There was additional testimony that stains found on her jeans could have been blood, but the test was inconclusive.

The defendant did not testify.

I

The defendant urges that the testimony of the complainant confirms that the sexual intercourse was with her consent and that the evidence does not prove rape beyond a reasonable doubt.

■■ ■ Where a rape conviction turns on the complainant's testimony, it must be clear and convincing, or corroborated by other evidence. (*People v. Wilcox* (1975), 33 Ill. App. 3d 432, 436.) When the victim retains the power to resist, voluntary submission, however reluctant, constitutes consent. (*People v. Rossililli* (1962), 24 Ill. 2d 341, 347; *People v. Jones* (1975), 28 Ill. App. 3d 896, 899.) No definite standard fixes the amount of resistance which the complainant must offer (*People v. McCann* (1979), 76 Ill. App. 3d 184, 186), and resistance is unnecessary where it would be futile or endanger the victim, or where she is overcome by superior strength or paralyzed by fear. (*People v. Clarke* (1971), 50 Ill. 2d 104, 109; *People v. Smith* (1965), 32 Ill. 2d 88, 92.) The reviewing court will not set aside a verdict of rape unless the evidence is so palpably contrary to the finding or so unreasonably improbable or unsatisfactory that there is a reasonable doubt as to the guilt of the accused. *People v. Reese* (1973), 54 Ill. 2d 51, 57-58; *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 436.

In this case complainant's testimony clearly shows resistance. While on the couch she pushed defendant away; she tried to leave defendant's apartment but was pushed back inside by defendant; she struggled and screamed when defendant's genitals came in contact with her; she struck his head with her fist, but he was on top and choked her, then struck her across the face with the back of his hand. True she did "elect" to go into defendant's bedroom where she disrobed, but this was only after defendant had choked her and she said

she was afraid defendant would actually kill her. In this view, further resistance would have endangered her safety.

Defendant finds "dangerous parallels" between the case at bar and *People v. DeFrates* (1965), 33 Ill. 2d 190, 195-96, where the supreme court reversed a rape conviction for insufficient corroboration of force by defendant and against the victim's will. Here by contrast, there was corroborating medical testimony indicating "significant" marks on her neck, and bruises on her wrist and on one knee. She said she was bleeding from two knuckles on her left hand, and stains found on her jeans were consistent with blood. The investigating officer on arrival found the defendant's living room in disarray. Neighbors testified that she was crying, shaking violently, and near shock when they arrived at the complainant's apartment. Significantly unlike the defendant in *DeFrates*, defendant here concedes that there was violence. *DeFrates* thus is distinguishable on the basis of medical testimony and corroborating circumstances. Also, the defendant in *DeFrates* directly testified as to the victim's consent, whereas here defendant chose not to testify; therefore, the complainant's testimony in this case was not directly controverted.

■■ ■ Where, as here, the victim has resisted but further resistance could endanger her safety, the fact that the complainant went into the bedroom and removed her own clothes without being asked and did not continue to resist does not establish voluntary submission in view of the prior show of force. (*People v. Houck* (1977), 50 Ill. App. 3d 274, 283; *People v. Jones* (1975), 28 Ill. App. 3d 896, 900.)[1] The defendant's assertion that she had the physical power to resist in the bedroom is unsupported. The fact that she asked defendant "why didn't you tell me before that you liked me?" when he said he loved her, before going to his bedroom without a verbal threat, appears adequately explained by her testimony, which the jury apparently believed, that she was scared that defendant would kill her. (*Cf. People v. Jones* (1975), 28 Ill. App. 3d 896, 898-900 (victim who said "let's get on with it," and first suggested that defendant take off his pants did not consent to intercourse where she explained that she "got re-

---

[1]The dissent concludes that defendant did not intend intercourse while defendant and the victim struggled on the living room floor, during "Act Two." This conclusion ignores the victim's testimony that immediately before they fell to the floor, while still on the sofa, defendant got "very angry" when she struck defendant on the head after he had forced his lower body onto hers. We do not see why, accepting the dissent's terminology, "Act Two" began on the floor and not on the couch. The general intent necessary for rape can be established from the totality of circumstances. *People v. Utinans* (1977), 55 Ill. App. 3d 306, 316-17.

ally scared" and thought defendant would change his mind if she frightened him).) That there was a prior consensual relationship must be taken into account (*People v. Mangiaracina* (1981), 98 Ill. App. 3d 606, 610; see also Ill. Rev. Stat. 1981, ch. 38, par. 115—7) but did not give defendant the license to force sexual acts which defendant testified on this occasion were against her consent. (*People v. Wilcox* (1975), 33 Ill. App. 3d 432, 436.) Finally, the fact that the complainant let herself out of defendant's apartment after intercourse while defendant slept is consistent with rape, contrary to defendant's assertion, since it would amount to escape at first opportunity. (*People v. Secret* (1978), 72 Ill. 2d 371, 378.) Her prompt complaint shortly thereafter was further corroboration of her testimony. *People v. Edmond* (1979), 76 Ill. App. 3d 540, 546.

■ Where the act of sexual intercourse is not questioned, as here, the accused inherently is vulnerable to conviction on the basis of facts, known only to the complainant and the accused, which if accorded a slightly different interpretation could establish either guilt or innocence. (*People v. Faulisi* (1962), 25 Ill. 2d 457, 461; *People v. Porter* (1973), 13 Ill. App. 3d 893, 898.) For this reason the testimony of the complainant is required to be clear and convincing or independently corroborated. The complainant's testimony was here independently corroborated by circumstances indicating that a struggle took place in defendant's apartment, and her testimony, which the defendant could not directly controvert, was neither incredible nor improbable, but clear and convincing. In this view, defendant was proven guilty of rape beyond a reasonable doubt over his contention that the victim consented.[2]

---

[2]The dissent argues that there is no proof that defendant intended "to have intercourse forcibly and against the will of the female." However, the only intent necessary to support rape is the *general* intent to perform the physical act; "whether the defendant intended to commit the offenses without the victim's consent is not relevant, the critical question being whether the victim did, in fact, consent. This involves her mental state, not the defendant's." (*People v. Mangiaracina* (1981), 98 Ill. App. 3d 606, 609.) The dissent then concludes that rape and assault with intent to rape require the same mental state. This is incorrect:

> "[t]he crime of rape must be understood as *not* including an element of knowledge of the woman's lack of consent, from which it follows that not every mistake by the defendant by which he believes the woman is consenting will be a defense. But, the crime of assault with intent to rape clearly sets forth a mental element; the defendant's purpose in assaulting the woman must be rape. This purpose of intercourse against the woman's will cannot be present if the defendant believes—even unreasonably—that the woman is consenting." (W. LaFave & A. Scott, Criminal Law sec. 47, at 358 (1972).)

Thus, the defendant's unreasonable belief in the victim's consent is a possible defense

## II

■ In seeking a new trial, the defendant claims that the trial court erred in admitting the testimony of her statements to others that she had been raped and the testimony of these other witnesses as to her claim. The defendant argues that the victim's complaint of rape occurred only after there had been time for reflection and thus that it should not have been admitted over his objection at trial as an exception to the hearsay rule. He also argues that the repetition of these statements in the testimony of the witnesses Drake and Hart enhanced the prejudicial effect of the error.

Statements of the victim of rape may qualify either as an excited utterance or as a corroborative complaint if promptly made. (See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 611.15, at 321-22 (3d ed. 1979).) On direct examination the complainant testified that when she first telephoned Scott Drake she said that she needed help, that she had been raped. The fact that she made complaints of the offense, upon returning to her apartment, without any inconsistent or unexplained delay but at first opportunity, was admissible on direct examination to corroborate her testimony where, as here, the name of the accused or details had not been disclosed. *People v. Collier* (1978), 66 Ill. App. 3d 1007, 1011; *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 437.

■ In the testimony of Drake and Hart, the complainant identified defendant as her rapist; these hearsay declarations were admissible, if at all, only as an excited utterance or spontaneous declaration. The requirements for admissibility under this hearsay exception are: (1) the occurrence of an event or conditions sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence. (*People v. Robinson* (1978), 73 Ill. 2d 192, 199.) Some latitude exists regarding the permissible lapse of time between the event and the statement, the question being whether the statement was made while the excitement of the event predominated. Lapse of time is but one factor to be considered by the court in reaching an answer in the particular case. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.3, at 427 (3d ed. 1979).) The single question "what happened" does not disqualify an utterance that is otherwise volun-

---

to assault with intent to rape but not to rape. (W. LaFave & A. Scott, Criminal Law sec. 47, at 358 n.12 (1972).) We consider that any belief by defendant in the victim's consent could not be reasonable in view of defendant's use of violence immediately preceding intercourse.

tary and spontaneous. *People v. Damen* (1963), 28 Ill. 2d 464, 472.

By defendant's own reckoning in his brief, 17 minutes elapsed between the act of intercourse and complainant's telephone conversation with Drake; another five minutes elapsed between then and Drake's and Hart's arrival at her apartment. The unimpeached testimony of both Drake and Hart was that the victim during this time was crying, shaking violently, sometimes screaming, near shock and hysterical; and that her complaint of rape identifying the defendant was spontaneous rather than a recital of events elicited from questions propounded to her. In these circumstances it does not appear that the trial court erred as from their testimony the excitement of the event appeared to predominate, the prosecuting witness not having regained her faculties for reflection. *People v. Kilgore* (1976), 39 Ill. App. 3d 1000, 1005 (victim's statement to friend 20 minutes after attack properly admitted as spontaneous declaration of rape).

However, even if the victim's later declaration to Drake and Hart was too remote, the testimony was merely cumulative of the facts in evidence, defense counsel vigorously cross-examined the victim, and her testimony was circumstantially corroborated by the examining physician and the investigating officer who testified as to evidence of a struggle in defendant's apartment. Therefore, the error, if any, was harmless. *People v. Robinson* (1978), 73 Ill. 2d 192, 199-200 (declaration made 3½ hours later not spontaneous but admission was harmless); *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 437 (utterance made 10½ hours later not spontaneous but admission was harmless).

### III

■ The further contention of defendant that he was deprived of an impartial jury requires us to consider the following circumstances relating to a juror, Gerald Devine.

During *voir dire* the trial court addressed questions to the jury as a group which included Devine. Among other questions, the court asked whether any prospective jurors had any friends or relatives on the police force. Several of the jurors related their acquaintance with policemen or deputies. Three of the jurors who had stated some acquaintance with the police were taken on the jury; one juror who stated that her husband had been a classmate and she and her husband were social friends of a policeman in Rockford, but that this would not interfere with her judgment of the case, was excused for cause. Juror Devine, however, did not come forward. He later became foreman of the jury.

Defendant in his motion for a new trial alleged that Devine con-

cealed the fact "that he had acquaintances and friends employed by the Winnebago County Sheriff's Department in an attempt to conceal prejudice in that respect in favor of the prosecution." The further allegation was made that Devine stated during the jury's deliberations,

"Let's get this thing over with. If the defendant is not guilty he can always get the case reversed on appeal."

In the hearing before the court on the motion for a new trial defendant's counsel sought permission to elicit testimony from Devine and another juror. In response to the State's argument that it is improper to inquire as to a juror's motives, methods or process of deliberation (*People v. Holmes* (1978), 69 Ill. 2d 507, 511-12; *People v. Preston* (1979), 76 Ill. 2d 274, 288), defendant's counsel responded that the testimony as to Devine's comments during deliberations was being offered only as an extraneous matter for the purpose of showing the tainting of the jury process and not as an inquiry into the reasons of the jury's decision.

The court refused to permit Devine or another juror whom defense counsel had subpoenaed to be called and ruled that he was relying on the general rule that an inquiry could not be made into the reasons for a jury's decision and further found that there was no showing of actual prejudice in the failure of Devine to disclose his acquaintance.

The burden of showing that a juror has a disqualifying state of mind rests with the party challenging the jury. (*People v. Cole* (1973), 54 Ill. 2d 401, 413; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 678.) Relying on *Cole*, the State contends that the juror's failure to disclose cannot be prejudicial where he could not be removed for cause as a matter of law if he had disclosed such alleged contacts with the county sheriff's department. (See also *People v. Levine* (1981), 99 Ill. App. 3d 141, 164-65.) In *Cole*, the juror candidly disclosed his contacts, and the trial judge was in the position to weight his *voir dire* examination in which he said that his prior contacts would not influence him. Here there was no opportunity furnished to weigh the evidence.

The State also argues that mere conjecture cannot be considered as a proper basis for a claim of prejudice. (*People v. Singletary* (1979), 73 Ill. App. 3d 239, 247.) The State notes that defendant accepted other jurors who had admitted on *voir dire* that they had friends or relatives who are members of the Rockford police department. Further, that Devine's failure to disclose might have been inadvertent if he did not hear the court's question to the panel of 12, and that Devine was extensively interrogated by both counsel before he was

accepted. The record does not indicate whether defendant had exhausted his peremptory challenges, but it appears unreasonable to conclude that no actual prejudice could have existed where defendant had not been allowed to present any testimony or affidavits which, if believed, would establish juror disqualification.

■ Where a defendant does not learn of facts which might support a finding of partiality by a juror until after a verdict, a post-trial evidentiary hearing may be necessary to permit defendant to prove actual bias. (See *Remmer v. United States* (1954), 347 U.S. 227, 228, 98 L. Ed. 654, 655, 74 S. Ct. 450, 451; *Smith v. Phillips* (1982), 455 U.S. 209, 215, 71 L. Ed. 2d 78, 85, 102 S. Ct. 940, 945.) The intention of the juror at the time of *voir dire* is, for these purposes, of little importance if important circumstances remain undisclosed. (Accord, *People v. Graham* (1978), 84 Mich. App. 663, 668, 270 N.W.2d 673, 676.) It is, however, incumbent on the movant to introduce or to offer in support of the new trial motion distinct evidence of partiality by affidavit or juror testimony. (See *Glasser v. United States* (1942), 315 U.S. 60, 87, 86 L. Ed. 680, 708, 62 S. Ct. 457, 472.) In all cases, the allegations must be sufficiently specific, detailed, and nonconjectural so that the fact of prejudice is raised; but any doubt should be resolved in favor of granting the evidentiary hearing. *McCoy v. Goldston* (6th Cir. 1981), 652 F.2d 654, 657, 659.

■ Here, the hearing on defendant's new trial motion could not be considered a meaningful inquiry where the trial judge refused to hear testimony on allegations which, if true, would require a new trial. (See *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232, 238.) Moreover, by refusing to hold an evidentiary hearing on factual issues raised in defendant's motion, the trial court failed to develop an adequate record upon which to base its finding of no "actual prejudice," rendering meaningful appellate review of its finding of fact impossible. (*Cf. Schultz v. Rockwell Manufacturing Co.* (1982), 108 Ill. App. 3d 113, 120 (where trial court declined to hold post-verdict evidentiary hearing on defendant-corporation's motion, based on possible juror bias against defendant in products liability action, appellate review of supporting affidavits would not be denied where trial judge created "inadequate" record).) We recognize that this case does not involve a presumptively prejudicial private conversation by a third party with a juror (see *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232, 238; *Remmer v. United States* (1954), 347 U.S. 227, 228, 98 L. Ed. 654, 655, 74 S. Ct. 450, 450-51) and that there is no similar presumption of prejudice where the juror fails to disclose facts on *voir dire*. (*People v. Hunt* (1983), 112 Ill. App. 3d

138, 141.) We also recognize the difficulty of proving a case of juror bias particularly when it arises from possible acquaintance with a police officer. It does not follow that a hearing should therefore be refused. As one Supreme Court justice has noted:

"A hearing permits counsel to probe the juror's memory, his reasons for acting as he did, and his understanding of the consequences of his actions. A hearing also permits the trial judge to observe the juror's demeanor under cross-examination and to evaluate his answers in light of the particular circumstances of the case." (*Smith v. Phillips* (1982), 455 U.S. 209, 222, 71 L. Ed. 2d 78, 89, 102 S. Ct. 940, 948 (O'Connor, J., concurring).)

A new trial must be granted when either the juror admits bias (see, e.g., *People v. Cravens* (1941), 375 Ill. 495, 498) or the trial judge, after a hearing, makes the pragmatic judgment that there exists a substantial possibility that the juror has unconsciously favored one side. *McCoy v. Goldston* (6th Cir. 1981), 652 F.2d 654, 659.

We accordingly vacate the judgment and remand to the trial court for the purpose of conducting a hearing to determine whether the juror had friends in the county sheriff's department, the extent to which his friendships, if any, may have influenced the juror and the prejudice, if any, to the defendant. We find no merit in defendant's other claims of reversible error and conclude that the evidence proves defendant's guilt beyond a reasonable doubt. Therefore, in the event after a hearing the trial court determines that the claim of juror misconduct does not entitle defendant to a new trial, the conviction and sentence will be reinstated; otherwise defendant must be afforded a new trial. See *People v. Holiday* (1970), 47 Ill. 2d 300, 311.

Vacated and remanded with directions.

HOPF, J., concurs.

JUSTICE LINDBERG, dissenting in part:

I dissent from the majority opinion to the extent that I do not believe defendant was proved guilty of rape beyond a reasonable doubt as a matter of law. I would affirm the trial court as to defendant's other contentions of error. I would reverse defendant's conviction for rape and reduce the degree of the offense to aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)), and remand the cause for sentencing pursuant to our authority under Supreme Court Rule 615(b) (87 Ill. 2d R. 615(b)).

The State's proof of the commission of the offense of rape was

largely through the testimony of the complaining witness. That proof establishes beyond a reasonable doubt that defendant's choking and striking of the victim was aggravated battery. However, there was no proof whatever that defendant possessed the necessary general mental state of intent to have intercourse forcibly and against the will of the female.

Clearly, from the *female's* standpoint, the act was forcible and against her will. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a).) However, it is the mental state of the *defendant* that must be established. Rape requires proof of the defendant's general intent to commit the offense. This is satisfied by proof of intent, knowledge or recklessness. (Ill. Rev. Stat. 1979, ch. 38, pars. 4—3, 4—4, 4—5, 4—6, 11—1; *People v. Farrokhi* (1980), 91 Ill. App. 3d 421.) Rape is not an absolute liability offense. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a); *People v. McMullen* (1980), 91 Ill. App. 3d 184.) The criminal intent must be a direct and specific intent to commit the offense charged. (*People v. Connors* (1912), 253 Ill. 266.) Criminal liability, with the exception of strict liability crimes, is dependent upon the simultaneous occurrence of defendant's requisite mental state and the criminal act. *People v. Taylor* (1979), 68 Ill. App. 3d 680.

Even an indecent assault, however aggravated, will not warrant conviction of assault with intent to commit rape without proof of an intention to have intercourse with a woman by force and against her will. (*People v. Hiller* (1955), 7 Ill. 2d 465; *Barr v. People* (1885), 113 Ill. 471.) While these cases relate to the offense of assault with intent to commit rape (see Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a)), that offense includes every element of the crime of rape except penetration (*People v. Stagg* (1963), 29 Ill. 2d 415), and the same principle should therefore pertain to the mental state requirement of the defendant for forcible intercourse against the will of the female.

The complaining witness' testimony in this case reflects that she approached defendant in the tavern, hugged him, gave him a "peck" on the cheek and inquired if he knew of any parties. He knew of none but suggested they go to his apartment only one building removed from her apartment, and a short distance from the tavern. She purchased a six-pack of beer and they went to his apartment, turned on the music, and she had a beer while they sat on the couch. The majority opinion adequately describes the activities that then occurred and it is obvious and uncontradicted that she suffered a significant criminal battery and was restrained in her efforts to leave the apartment.

Nonetheless, crediting her testimony completely, her evidence fails to show a nexus between the fight and defendant's attack upon

her and the act of intercourse so as to establish defendant's criminal liability for the offense of rape. As the majority acknowledges, defendant *never* demanded intercourse although she maintained the intercourse was without her consent. She testified that after the fight she got up and went into the bedroom, took her clothes off and got into bed; defendant followed her into the bedroom and similarly disrobed and got into bed and, with no resistance by her, they had intercourse.

She attributed her lack of resistance to being scared that he would choke her again or kill her. She was crying after the intercourse. He didn't want her to leave, but she pleaded to go the bathroom, which he allowed her to do. He then fell asleep and she hurriedly grabbed her jeans and jacket and went home leaving her shoes behind. As the majority notes she called upon neighbors for help. She said she had been raped and the police were called.

For the purpose of analysis and without denigrating the seriousness of the violent battery committed upon the complaining witness, her testimony suggests a play in three distinct acts. The first act took place on the couch and at the doorway, the second on the floor and the third in the bedroom. Further, the backdrop of all these activities in the apartment is her acknowledgement of their mutual intoxication. Her clear, convincing and unrebutted testimony establishes that while the couple was on the couch, he attempted intercourse with her and with some degree of force and against her will. While no intercourse resulted and they remained fully clothed, his genitals rubbed the front of her body and legs. Her resistance resulted in her flipping him onto the floor where they again came into contact.

It was on the floor that the second act began which involved the battery. Significantly, during re-cross-examination the complaining witness specifically *denied* that defendant "insinuated by his body movement that he was interested in having intercourse *** during the time [they] were on the floor of the apartment." Most importantly, she limits his insinuation of interest in intercourse to the first period of the evening in the apartment when they were on the couch, Act One. The complaining witness was asked on re-cross-examination:

> "Q. Ma'am, you said that the Defendant insinuated by his body movement that he was interested in having intercourse with you and that this was being done during the time that you were on the floor of the apartment, is that true?"

and she answered:

> "A. No, that's not correct. It was done the time that we were on the couch."

It is indisputable that the fight that took place, during Act Two, was unrelated to any interest by defendant in sexual intercourse with the complaining witness.

The record reflects the following:

"Q. When he was slapping you, was he doing anything to insinuate to you at that time that he wanted to have intercourse with you; did he say anything to that effect?

A. No, he did not.

\* \* \*

Q. After the fight was over, he did nothing to insinuate to you by his actions or by his words that he wanted to have intercourse with you, is that true?

\* \* \*

THE WITNESS: That's right."

This testimony proves that defendant's intent to have forcible intercourse was limited to Act One, the time during which they were on the couch. The record is void of any evidence of defendant's intention to have sexual intercourse forcibly and against the will of the complaining witness at the time they had sexual intercourse in the bedroom.

Defendant tried unsuccessfully to establish that the fight was about the victim's use of speed. She admitted having used speed but denied they fought that evening about her use of speed. We are left without a reason for the fight but, as the record demonstrates, it was not over his interest in having sexual intercourse with her.

The State had earlier asked the complaining witness "[w]hat is the reason you walked in there [the bedroom] with him?" She answered "[b]ecause I was scared he would choke me again. I was actually scared that he was going to kill me." Her testimony in this regard is what appears to make this case unique and perhaps explains the paucity of authority directly on point. That is, where the evidence establishes the victim had intercourse under threat of a battery not based upon defendant's intent to have intercourse forcibly or against the victim's will, does that evidence establish the requisite mental state of the defendant for the offense of rape? I believe not.

In sum, the mental state of the victim was established by clear and convincing evidence that she was having intercourse forcibly and against her will. Her mental state, at least under these facts, cannot be ascribed to the defendant. The evidence does not establish that at the time of the act of intercourse defendant possessed an intention to have intercourse forcibly and against the will of the female.