UNITED STATES

v.

**Technical Sergeant Charles K. LINGLE,
FR 110–46–2126. United States Air Force.**

**ACM 26962.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 March 1988.
Decided 9 Dec. 1988.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Lieutenant Colonel Patrick C. Sweeney and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Morris D. Davis.

Before HODGSON, FORAY and HOLTE, Appel'  : Military Judges.

## DECISION

HODGSON, Chief Judge:

Contrary to his pleas the appellant was convicted of assaulting Tiffany Pankow, his girl friend's three and a half year old daughter, by breaking the child's arm, beating her on the face, buttocks and genitalia and hitting her in the stomach with his fist hard enough to break a blood vessel in her duodenum. He was sentenced to a bad conduct discharge, confinement for one year, total forfeitures, and reduction to airman.

The victim's mother, Linda Pankow, lived with the appellant from 1 November 1986 until 19 May 1987. Beginning in the fall of 1986 various baby-sitters, day care providers and neighbors noticed large bruises and welts all over the child's body. During this period a baby-sitter and a neighbor both observed a "large purple bruise" on the child's genitalia. The appellant attributed this to falling off a rocking horse. Another baby-sitter, while changing the child's panties, saw that her buttocks were "all black and blue." When questioned by the baby-sitter, the child indicated that, "Chuck [appellant] spanked me." Linda Pankow testified that the appellant would "occasionally discipline" her daughter with a belt. Ms. Pankow also indicated that her child began getting bruised more frequently after she and her daughter moved in with the appellant. Starting in late December and early January 1987, the victim was seen with black eyes, bruises on the face and a swelling across the forehead. Linda Pankow told the doctor that the child "had fallen down stairs."

On 29 March 1987, Tiffany was taken to the emergency room because of a pain in her upper arm. She was accompanied by her mother and the appellant who indicated that when he reached into the bed to turn her over "she fought back and [the appellant] heard a pop." Examination disclosed that the child had a spiral fracture of the left humerus. Medical testimony established that a spiral fracture can result from a "twisting" of the limb, but requires "a fairly excessive movement in order to break the arm." An exceptional degree of force is needed. A spiral fracture is not a common childhood injury. The examining physician also noticed that Tiffany had multiple bruises on her face that were two or three days old.

On 18 May 1987, Linda Pankow brought Tiffany to Doctor David M. Blehm, a civilian pediatrician practicing in Minot, North Dakota, to be examined because she was vomiting. Dr. Blehm observed that the child had black eyes and bruises on her face and body. Her medical history indicated a spiral fracture of the left arm and a significant weight loss that began in December 1986.

The next day when the vomiting became worse and Tiffany became more dehydrated, she was admitted to the hospital for evaluation and to replace intravenously the loss of fluids. The hospital did a barium

study of her upper gastro-intestinal tract and CAT scan of the abdominal area. The test revealed that the vomiting was caused by a hematoma in Tiffany's duodenum. Dr. Blehm stated an injury of this type is serious and life-threatening and is usually the result of a "blunt abdominal trauma." Such an injury may be caused by a car accident where the individual is struck in the stomach by the steering wheel column, or by being hit in that region by a fist or foot, or by falling on a hard object. Further examination indicated that Tiffany had recently received a blow hard enough to break her ribs.

Dr. Blehm also testified that after Tiffany was admitted to the hospital and the tests completed and evaluated, he asked her, "Did you get a owie?," and "What happened to your tummy?" At this point, Tiffany clenched her fist, made a motion toward her stomach, and said, "Chuck hit me."

In Dr. Blehm's opinion Tiffany's injuries and vomiting problems fit the "battered child syndrome." Further, Dr. Blehm stated it was highly unlikely that her injuries were accidental.

Special Agent Timothy A. Davis testified as an expert in the forensic aspects of non-accidental injuries. After examining the photographs of the bruises to face, legs, arms, back and buttocks of the injured child, he opined that they could not be the result of a single injury. He further was of the opinion that the accumulation of injuries sustained by the victim was "highly indicative of non-accidental trauma."

Major (Doctor) Carmen L. Talarico is the Chief of Pediatric Radiology at Fitzsimmons Army Medical Center, Denver, Colorado. Upon examining the medical records of Tiffany Pankow, Dr. Talarico was of the opinion that the spectrum of injuries he reviewed supports the conclusion that "[Tiffany] was the victim of child abuse, non-accidental trauma, ... otherwise known as the Caffey–Kemp syndrome." This last medical term is better known as the "battered child syndrome." In Dr. Talarico's experience an accidental spiral fracture is "very, very unlikely" in a three year old child, and it was "beyond any reasonable medical certainty" that the injury was an accident.

When the baby-sitters and care providers exhibited concern over Tiffany's bruises and injuries and asked her what happened, the child indicated in a typical three year old manner that "Chuck" was the one that hurt her. Tiffany's aunt testified that when her five year old, with whom Tiffany was playing, asked "What happened" i.e., bruised face, black eyes, etc., Tiffany replied, "Chuck kicked me in the butt." There was substantial testimony that Tiffany was afraid of her mother's boy friend and would cling to whomever was present rather than have to go home where he was or leave with him. Medically, it was established that this type of behavior can be expected from an abused child. While she was in the hospital, Tiffany told the interviewing social worker that "Chuck hurts me all the time" by kicking her, "stepping on her tummy," and "hitting her in the nose."

The appellant's mother stated that Tiffany got along with her son's children by a prior marriage, but she appeared to be accident prone. She acknowledged that her son was a "very strict disciplinarian." A next door neighbor stated that Tiffany was clumsy and "would walk into things and hurt herself."

I

■ Mil.R.Evid. 803(4) is taken verbatim from the corresponding Federal Rule and states:

(4) *Statements for Purposes of Medical Diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonable pertinent to diagnosis or treatment.

However, there are two conditions that must be met before statements given for the purpose of medical diagnosis or treatment are admissible. These conditions are: first, the statement must be "made for

purposes of medical diagnosis or treatment;" and second, the patient must make the statement "with some expectation of receiving medical benefit from the medical diagnosis or treatment that is being sought." *United States v. Williamson,* 26 M.J. 115 (C.M.A.1988).

Appellate defense counsel challenge the admissibility of Tiffany's statement to Dr. Blehm about the injury to her stomach on two grounds: (1) That Tiffany "was barely three years old" at the time she saw Dr. Blehm and therefore lacked "the cognitive ability to reason in abstract terms, i.e., If I tell the doctor what hurts, then I'll get medical treatment;" and (2) Her identification of the appellant as the source of the injury was not relevant to a medical diagnosis or treatment.

▇ We find the appellant's assertion that Tiffany was so young that she did not understand that the person to whom she was talking would help her feel better to be unfounded in both law and the facts under review. The courts recognize that when children are being treated the quantum of proof needed to qualify a statement under the medical exception to the hearsay rule is relaxed. *United States v. Avila,* 27 M.J. 62 (C.M.A.1988); *United States v. Williamson,* 26 M.J. 115. Tiffany, in her short life, had been taken to a doctor a number of times to be treated for injuries. Just six weeks earlier she had been treated by a doctor for a broken arm, and before that by a different doctor for headaches caused by injuries to the face and head. At the time she told Dr. Blehm how her "tummy" was hurt she was in a place where people who hurt are helped, i.e., a hospital. Common sense allows us to conclude that even a three year old child knows that doctors and nurses are people who help stop pain and that a hospital is a place where you are taken to get help. The situation before us is not that discussed in *United States v. Avila,* where the psychologist went to great lengths to hide her position as a person providing health care and presented herself to the patient as "just another mommy." We hold that the trial judge's conclusion that Tiffany's statement to Dr.

Blehm fell within the hearsay exception contemplated by Mil.R.Evid. 803(4) to be well-supported by the law and the facts before him. *See State v. Bellotti,* 383 N.W.2d 308 (Minn.App.1986) (statement by a four year old to a doctor held admissible under the medical exception to the hearsay rule); *see also United States v. Quick,* 26 M.J. 460 (C.M.A.1988).

Turning now to appellate defense counsel's complaint that Tiffany's identification of the person who abused her was immaterial to the diagnosis and treatment of her injuries, we find a trend in both military and civilian courts to permit the admission of identification evidence under Rule 803(4) in child abuse cases. The rationale for allowing such evidence is both reasonable and medically logical as there can be psychological as well as physical problems resulting from child abuse. The success of treatment in both areas often depends on identity of the abuser. When the child is abused in the home by a parent or other primary care provider, it is essential that the victim be moved to an environment where he or she can be protected from continued abuse. Our brethren on the Army Court of Military Review recognized this in *United States v. Brown,* 25 M.J. 867, 869 (A.C.M.R.1988), when they held:

> Failure to determine the identity of the perpetrator of an apparent child abuse injury prevents the diagnosis of serious psychological and emotional injury, thereby hindering proper medical treatment and allowing recurrence of abuse.

We join our sister service in concluding that the admission of perpetrator identification evidence is a correct step toward serving the medical needs of abused children and the interests of justice. *Accord United States v. Deland,* 22 M.J. 70 (C.M.A. 1986); *see also United States v. Renville,* 779 F.2d 430 (8th Cir.1985). The trial judge did not abuse his discretion in admitting such evidence. *United States v. DeNoyer,* 811 F.2d 436 (8th Cir.1987).

## II

▇ During the trial, the military judge admitted, over defense objection, statements by Tiffany that the appellant had

routinely mistreated her. Three of the challenged statements were made to baby-sitters who, after seeing large bruises on the child, inquired "What happened?"; and thereafter Tiffany indicated that the appellant had hit her. The fourth statement was obtained by a child welfare worker from Tiffany while she was in the hospital being treated for an abdominal injury. During the interview Tiffany stated, "Chuck hurts me all the time."

The trial judge admitted these statements under Mil.R.Evid. 803(3) [1] as a declaration of Tiffany's then existing state of mind, emotion, sensation or physical condition. The military case law in this area is sparse, but the drafter's analysis to Rule 803(3) suggests that a fresh complaint by a sexual offense victim may come within this exception. See Drafter's Analysis to Rule 803(3), Salzburg, Schinasi, and Schlueter, *Military Rules of Evidence Manual 2d Ed.*, p. 655. We see no reason not to extend this principle to child abuse victims as well. *Accord United States v. Evans,* 23 M.J. 665 (A.C.M.R.1986), *aff'd on remand,* 26 M.J. 550 (A.C.M.R.1988).

Even though child abuse is abhorred at all levels of society, the Courts have striven to protect the rights of the criminal defendant as well as those of the child victim. *United States v. Barror,* 23 M.J. 370 (C.M.A.1987); *United States v. Hines,* 23 M.J. 125 (C.M.A.1987); *see also United States v. Jones,* 25 M.J. 567 (A.F.C.M.R. 1987). The majority of cases in this area involve the relationship between the Confrontation Clause of the Sixth Amendment and the evidentiary rules regarding the admissibility of hearsay statements. The keystone to the admission of such statements is a determination that they possess sufficient indicia of reliability so as to meet the Constitutional guarantee of confrontation. Well-rooted and long-established exceptions to the hearsay rule, such as a statement of "existing mental, emotional,

or physical condition" are inherently reliable. *See United States v. Bridges,* 24 M.J. 915 (A.F.C.M.R.1987).

█ It is apparent that Tiffany's injuries took place sometime before she discussed them and said how they occurred. The courts are aware that when a child is abused by an adult standing in the position of a parent, it is unlikely that the victim will immediately come forward and report the incident until he or she is with someone who can be trusted. *United States v. Arnold,* 25 M.J. 129, 132, n. 3 (C.M.A.1987). The fact that caring adults asked "What happened?" does not disqualify an utterance that is otherwise voluntary and spontaneous. *People v. Witte,* 115 Ill.App.3d 20, 70 Ill.Dec. 619, 449 N.E.2d 966 (2d Dist.1983).

The courts also acknowledge that stress is often present for longer periods of time in young children than in adults. Accordingly, a child is likely to repress the incident and speak of it only when asked by a person the child trusts. *See State v. Padilla,* 110 Wis.2d 414, 329 N.W.2d 263 (Ct. App.1982). A declarant's young age is a positive factor supporting admissibility and assuring trustworthiness as it lessens the degree of skepticism with which we might view his or her motives. *See Roberts v. Hollocher,* 664 F.2d 200 (8th Cir.1981). Tiffany's answer to a playmate's question of why she was battered and bruised is the guileless response of a child telling the truth and is "free from 'all suspicion of device and afterthought.'" *United States v. Arnold,* 25 M.J. at 132 n. 3. The medical testimony is stark evidence of Tiffany's mistreatment. The pain, both emotional and physical, she endured is evident. We conclude the trial judge did not abuse his discretion in admitting the statement triggered by that pain and relating to the offense under review. The circumstances surrounding these statements "strongly suggest that the declarant's perception,

---

1. Mil.R.Evid. 803(3) states:

   (3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and

bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will.

memory, ... and sincerity concerning the matters asserted are trustworthy." *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir.1979).

### III

 Appellate defense counsel next argue that the appellant was denied his Sixth Amendment right to Confrontation because the child victim was not called as a witness.[2] Little time need be spent on this argument. The United States Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1984) held that admission of hearsay evidence at trial did not violate the Confrontation Clause where the declarant did not testify and the statement bore adequate "indicia of reliability." The Court further indicated that "reliability can be inferred without more in a case where the evidence falls with a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539.

The challenged statements all fall "within a firmly rooted hearsay exception" where the availability of the declarant is immaterial. *See* Mil.R.Evid. 803. We also note there was no express objection to Tiffany's out-of-court statements on the basis of the Confrontation Clause of the Sixth Amendment and the child was a witness at the pretrial investigation hearing and subject to cross-examination. Further, Tiffany could have been called by the defense as a hostile witness and cross-examined. In a similar situation in *United States v. Quick*, the Court of Military Appeals found no violation of the Confrontation Clause. We hold that the government was not required to call Tiffany as a witness as her out-of-court statements contained guarantees of trustworthiness and reliability. *United States v. Quick*, 22 M.J. 722 (A.C.M.R. 1986); *aff'd* 26 M.J. 460 (C.M.A.1988). The hearsay evidence offered by the prosecution was admissible under established exceptions to the hearsay evidence rule.

### IV

 Finally, we are convinced beyond a reasonable doubt that Tiffany Pankow was physically abused in the manner alleged, and that the appellant was the source of that abuse. Article 66(c), UCMJ 10 U.S.C. § 866(c); *United States v. Littlehales*, 19 M.J. 512 (A.F.C.M.R.1984), *aff'd* 22 M.J. 17 (C.M.A.1986), *cert. denied* 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986). For the reasons stated the findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.

---

2. At trial the defense made a motion *in limine* to exclude Tiffany's testimony contending that her age made her an incompetent witness. In response to this motion the prosecution indicated that Tiffany would not be called as a witness, and the motion was never ruled on. Under these circumstances we need not decide if the appellant waived his right to confront Tiffany as a witness. *See United States v. Hines*, 23 M.J. 125 (C.M.A.1986).