# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Gray*, 2012 IL App (4th) 110455

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DeMARCO C. GRAY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0455 |
| Filed | December 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary dismissal of defendant's postconviction petition as frivolous and patently without merit was upheld, notwithstanding defendant's claim that his counsel was ineffective in failing to interview witnesses, since defendant failed to satisfy the two-part standard in *Strickland* under which he must show that his counsel failed to meet the standard of professional competence and that the performance caused prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 07-CF-437; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Johannah B. Weber and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Pope and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, DeMarco C. Gray, appeals from the summary dismissal of his petition for postconviction relief. In our *de novo* review (*People v. Edwards*, 197 Ill. 2d 239, 247 (2001)), we find the petition to be "frivolous" and "patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2010)), and therefore we affirm the trial court's judgment.

¶ 2                              I. BACKGROUND
¶ 3                              A. The Charge
¶ 4    The State charged that, on March 16, 2007, defendant committed the offense of unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West Supp. 2007)) in that, having previously been convicted of unlawful delivery of a controlled substance, which was a Class 1 felony and a violation of the Illinois Controlled Substances Act (720 ILCS 570/401 to 413 (West 2006)), he knowingly possessed a handgun.

¶ 5                         B. The Guilty-Plea Hearing
¶ 6    The morning of August 27, 2007, when jury selection was scheduled to begin, defendant's attorney, Harvey C. Welch, told the trial court that defendant wished to enter an open plea of guilty. The court admonished defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 1997) and requested the prosecutor, Troy Lozar, to provide a factual basis for the proposed guilty plea.

¶ 7    Lozar replied:

"MR. LOZAR: Judge, the offense in this case occurred on March 16th, 2007, approximately 8:30 in the evening at 607 Heath Drive in Rantoul.

The victim, an individual by the name of Timothy Johnson, reported to Rantoul

Police Department that this Defendant had pulled a gun on him and pointed it at the side of his head while he was at that address.

An officer who happened to be right in the area overheard the radio traffic, went outside and made contact and took that statement from Mr. Johnson.

This Defendant was located in the area, contacted, as well as an individual by the name of Nacami Gray (phonetic), the Defendant's sister, and who was dating Mr. Johnson.

The indication from information collected from the Defendant and Ms. Gray is that Mr. Johnson had come to–had been there with Ms. Gray and that this Defendant, DeMarco Gray, had come over to confront Mr. Johnson about what he'd perceived as being abuse towards Ms. Nacami Gray.

During that altercation, he had taken out a nine millimeter Glock handgun, pointed it at the victim's head, and, in his own words, the Defendant's word, [']checked him on his behavior.[']

Then officers made contact with him, he denied having any gun whatsoever, denied any physical confrontation with the–Mr. Johnson.

He was arrested.

Officers canvassed the area. Officer eventually found the handgun in question[,] which was a nine millimeter Glock semiautomatic pistol with a laser sight left in the area underneath a car.

The Defendant was eventually interviewed at RPD and did admit that was, in fact, the weapon he had used.

The Defendant also made statements on the way to the jail indicating to the officer and to other persons in the car without being questioned on it that he should have fired the gun at Mr. Johnson, thereby, giving the officers a [']real reason['] to arrest him.

The weapon was recovered. It was checked in. It matched consistent–it matched the description of that had also been previously provided by the Defendant without actually seeing the recovered handgun. That also corroborated the fact that this was the correct handgun used in this offense. Again, it was a fairly specific gun, being a nine millimeter Glock with a laser sight on it.

The Defendant presents with the prior conviction that's listed in the information, that being for a violation of the Illinois Controlled Substances Act, specifically, delivery of a controlled substance, Class 1 felony, in [No.] 99-CF-1435 out of Champaign County.

THE COURT: Mr. Welch, from your investigation, would you stipulate the People have evidence and witnesses who would testify substantially as indicated?

MR. WELCH: We do."

¶ 8 The trial court found a factual basis for the guilty plea and found the guilty plea to be knowing and voluntary. Therefore, the court accepted the guilty plea and entered judgment on it.

¶ 9          C. Defendant's *Pro Se* Motion To Withdraw His Guilty Plea
            and the Appointment of a New Defense Attorney

¶ 10        On September 17, 2007, defendant wrote the trial court a *pro se* letter stating he would like to withdraw his guilty plea and requesting the appointment of substitute counsel. The letter complained of Welch's failure to "get in touch with [any] of [defendant's] witnesses."

¶ 11        On September 19, 2007, the trial court substituted Edwin K. Piraino for Welch as defense counsel.

¶ 12                            D. The Sentencing Hearing

¶ 13        On November 28, 2007, the trial court sentenced defendant to imprisonment for 11 years.

¶ 14        The trial court gave Piraino leave to file an amended motion to withdraw the guilty plea. Piraino did so on December 28, 2007. (He also filed an alternative motion to reduce the sentence, which the court subsequently denied.)

¶ 15                      E. The May 2008 Postconviction Petition,
            Which the Circuit Clerk Omitted To Forward to the Judge

¶ 16        On May 23, 2008, defendant filed a *pro se* petition for postconviction relief. The circuit clerk omitted, however, to forward this petition to the trial judge.

¶ 17            F. The Hearing on the Motion To Withdraw the Guilty Plea

¶ 18        On March 27, 2008, the trial court held a hearing on the amended motion to withdraw the guilty plea. Defendant testified that, while he and Welch were preparing for trial, he gave Welch the names of witnesses whom he wanted Welch to call at trial but Welch never contacted any of these witnesses.

¶ 19        The State called Welch to testify in the hearing, and on cross-examination, Piraino asked Welch:

"Q. Now, Demarco [*sic*] asked that you subpoena some witnesses; is that correct?

A. Yes.

Q. Was those–were those witnesses ever subpoenaed?

A. No.

Q. –talked to?

A. No.

Q. And that was trial strategy, I take it? You did not feel at that point that it was necessary?

A. Yes, because any–any witness that had any knowledge about him being near or around any gun wasn't going to help. Felons can't have guns for any reason. So, I told him that–I mean, that's what I told him about the futility of the trial, but, yes, the reason why I did not call the witnesses is because based on what he told me he thought they would say, I didn't feel like they would be of any help.

-4-

Q. But when you came to court that morning, you were ready to go to trial?

A. If necessary, yes.

Q. And so if it would have gone to trial, you would not have been able to hear what–you did not know what those witnesses were gonna testify 'cause you didn't subpoena them or talk to them; is that correct?

A. That's correct, based on what he told me and what the charges were."

¶ 20 In denying defendant's motion to withdraw his guilty plea, the trial court noted the lack of any evidence as to who these witnesses were and how their testimony would have helped defendant with respect to the issue of issue of guilt. In fact, Welch had received the impression, from talking with defendant, that these witnesses actually would have tended to incriminate defendant by placing him near the gun.

¶ 21 G. The Direct Appeal

¶ 22 Defendant appealed from the denial of his motion to withdraw his guilty plea, arguing that his guilty plea was involuntary. He explained that he pleaded guilty on the scheduled date of trial only because he felt he had no other choice. He felt he had no other choice because Welch had failed to subpoena or even interview the witnesses defendant had requested. In short, defendant argued that Welch's lack of preparation effectively coerced him to plead guilty. *People v. Gray*, No. 4-08-0259, slip order at 1 (June 1, 2009) (unpublished order under Supreme Court Rule 23).

¶ 23 Because the record did not reveal who these witnesses were and what they would have said in the witness stand–other than that defendant was near the gun–we found no evidence of prejudice from Welch's failure to interview the witnesses. *Id.* Absent evidence of prejudice, we found no abuse of discretion in the denial of defendant's motion to withdraw his guilty plea. *Id.*

¶ 24 We explained that, under *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), which applied *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant had to prove two elements when challenging a guilty plea on the ground of ineffective assistance: deficient performance by defense counsel and resulting prejudice. *People v. Gray*, No. 4-08-0259, slip order at 6. The defendant not only had to prove that defense counsel failed to take reasonable professional measures to ensure that the defendant's guilty plea was knowing and voluntary, but the defendant also had to prove a reasonable probability that, but for the deficient performance, the defendant would have declined to plead guilty and would have insisted on going to trial. *Id.*

¶ 25 Because both of these elements were essential, a reviewing court could proceed directly to the element of prejudice, bypassing the question of whether defense counsel's performance actually was deficient. *Id.* "The defendant's bare, self-serving statement that but for the allegedly deficient performance, he would not have pleaded guilty" was insufficient to prove prejudice. *Id.* Instead, the defendant "ha[d] to prove that the neglected investigation would have produced a plausible defense." *Id.*

¶ 26 We said:

" 'Under *Hill*, the question of whether counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful at trial.' *People v. Hall*, 217 Ill. 2d 324, 336, 841 N.E.2d 913, 921 (2005). The Supreme Court has explained:

'[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.' *Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370." *Gray*, No. 4-08-0259, slip order at 6-7.

¶ 27    Obviously, without knowing the substance of the witnesses' expected testimony, one could not conclude it was reasonably probable that their testimony would have changed the outcome of a trial. *Id.* at 7. We held that, in the absence of this showing of prejudice, the trial court did not abuse its discretion by denying defendant's motion to withdraw his guilty plea. *Id.* at 1.

¶ 28                    H. The June 2009 Postconviction Petition

¶ 29    On June 25, 2009, defendant filed a second postconviction petition, and this petition reached the trial judge. Attached to the petition were affidavits by Michael A. Peoples and defendant's wife, Marie Glover.

¶ 30    On July 15, 2009, the trial court summarily dismissed this June 2009 petition as patently without merit. Defendant appealed.

¶ 31    We remanded the case with directions that the trial court perform a first-stage review of the May 2008 petition. *People v. Gray*, No. 4-09-0584, slip order at 7 (Sept. 3, 2010) (unpublished order under Supreme Court Rule 23). Our mandate issued on October 22, 2010.

¶ 32    On November 15, 2010, by agreement of the parties, we recalled our mandate so as to enter the following order: "The appellant's first petition for postconviction relief is, as yet, unresolved by the trial court and may be amended in the trial court by the adoption of exhibits appended to the postconviction petition, which is the subject of this appeal." Thus, the May 2008 petition could be amended by adding to it the affidavits of Michael A. Peoples and Marie Glover (attached to the June 2009 petition) when performing its first-stage review of the May 2008 petition.

¶ 33            I. The First-Stage Review of the May 2008 Postconviction Petition

¶ 34    It is unnecessary to recount all the allegations in the May 2008 petition. Instead, we will recount only the allegation that defendant discusses in his brief. We quote from his brief, which in turn quotes from the May 2008 petition: " 'Mr. Welch *** never got in touch with any witnesses know [*sic*] without knowing this who can draw any conclusion to what the outcome would have been had Mr. Welch been competent."

¶ 35    Peoples's affidavit reads as follows:

"To whom it may concern:

I was present the night in question and did not see DeMarco Gray with a firearm. I was willing to testify to this matter but Harvey Welch never contacted me to do so."

¶ 36    Glover's affidavit reads as follows:

"I Marie Glover would of testified on DeMarco Grays behalf if was called to testified. I Marie Glover would of testified that DeMarco Gray did not have any gun when I picked him up and when I dropped him off. I Marie Glover would have testified that DeMarco Gray did not have any kind of weapons on the night he was arrested. But Harvey Welch never called me to testify on DeMarco Grays behalf."

¶ 37    On November 15, 2010, the trial court summarily dismissed the May 2008 petition as "frivolous and patently without merit." The dismissal order references the claim that Welch rendered ineffective assistance by "not calling witnesses." It does not appear, however, that the order otherwise specifically discusses this claim.

¶ 38    In a more general vein, the trial court wrote:

The Court found that the plea was made knowingly, understandingly and voluntarily and that Mr. Welch provided effective assistance of counsel. The defendant does not raise any new or additional facts or allegations in his post-conviction motion that were not fully considered and part of the record. The defendant did not challenge that finding on appeal and has now forfeited it.

***

The doctrine of *res judicata* operates to bar the raising of claims that were or could have been adjudicated on direct appeal. A post-conviction petition is a collateral attack upon a prior conviction and sentence, not a surrogate for a direct appeal. Any issues which were decided on direct appeal are barred by *res judicata*. [Citation.]"

¶ 39    This appeal followed.

¶ 40                        II. ANALYSIS

¶ 41    In his brief, defendant cites a multitude of cases in support of the proposition that "failure to adequately prepare for trial by not conducting an investigation or by failing to interview witnesses known to counsel whose testimony may potentially exonerate defendant can support an ineffectiveness claim." *People v. Coleman*, 267 Ill. App. 3d 895, 899 (1994).

¶ 42    Defendant also cites several cases in support of the proposition that defense counsel's insufficient preparation for trial can have the effect of coercing the defendant to plead guilty. See, *e.g.*, *People v. Moone*, 45 Ill. 2d 488, 491 (1970); *People v. Algee*, 228 Ill. App. 3d 401, 404-05 (1992).

¶ 43    We agree with those propositions, but we notice that, among the numerous cases that defendant cites, he does not discuss or even cite *Hill*, although, on direct appeal, we dropped a strong hint that *Hill* provided the analytical framework applicable to this case (*Gray*, No.

4-08-0259, slip order at 6). See also *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005) (applying *Hill* to evaluate the claim that a guilty plea is unintelligent or involuntary on the ground of ineffective assistance of counsel); *People v. Rissley*, 206 Ill. 2d 403, 457-58 (2003) (same). This is not to say that the propositions that defendant advances lack relevance; it is just that one must interpret and apply these propositions within the analytical framework of *Hill*.

¶ 44     In *Hill*, 474 U.S. at 53, the defendant pleaded guilty to first degree murder and theft, and then, two years later, he challenged his guilty plea as "involuntary" on the ground that he had received ineffective assistance of counsel. He alleged that his court-appointed attorney had failed to advise him that, because of his prior felony conviction, he would have to serve one-half of his sentence in order to become eligible for parole. *Id.*

¶ 45     The Supreme Court held that the "two-part standard" in *Strickland* applied to "ineffective-assistance claims arising out of the plea process" (*id.* at 57): the defendant had to show, first, that the attorney's performance fell below the standard of professional competence and, second, that the substandard performance caused prejudice (*id.* at 58-59).

¶ 46     As for the first element, substandard performance, the Supreme Court said:

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' *McMann v. Richardson*, 397 U.S. 759, 771 (1970). As we explained in *Tollett v. Henderson*, 411 U.S. 258 (1973), a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.' *Id.*, at 267." *Hill*, 474 U.S. at 56-57.

¶ 47     As for the second element, prejudice, the Supreme Court said:

"[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

    In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. *** As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' *Id.*, at 695." *Hill*, 474 U.S. at 59-60.

¶ 48     Because both elements of *Strickland* are essential, a court may proceed directly to the question of prejudice, without considering whether defense counsel's performance fell below professional standards, as alleged. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should

be followed." *Strickland*, 466 U.S. at 697. We will proceed directly to the question of prejudice.

¶ 49    Again, *Hill* envisions prejudice in terms of the likely effect on defense counsel's recommendation. If Welch had spoken with Peoples and Glover and if they had told him what they state in their affidavits, would this evidence have led Welch to change his recommendation to defendant–would Welch have recommended going to trial instead of pleading guilty? See *Hill*, 474 U.S. at 59. In answering that question, we should assume that Welch is a rational person with sound judgment, making an honest, realistic assessment of defendant's chances in a trial in the light of all the evidence; that is, he is not an "idiosyncra[tic] *** decisionmaker," and he is taking it for granted that the jury likewise will not be an "idiosyncra[tic] *** decisionmaker." (Internal quotation marks omitted.) *Id.* at 60. Would Welch have predicted that this evidence in Peoples's and Glover's affidavits would turn the tables, that it would shift the advantage to defendant in a trial?

¶ 50    That prediction would have been "delusional." *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). By Welch's understanding and according to the factual basis in the guilty-plea hearing, the State was prepared to adduce the following evidence at trial: (1) Johnson's testimony that defendant pointed a gun at his head; (2) defendant's statement to police officers that he pulled out a 9-millimeter Glock pistol and pointed it at Johnson's head, to "check him on his behavior"; (3) police officers' discovery of a 9-millimeter Glock pistol in the area, underneath a car–the very type of pistol that defendant described to them beforehand; (4) defendant's admission, at the police station, that this particular pistol was the one he had pointed at Johnson's head; and (5) defendant's remarks, on the way to jail, that he should have fired the pistol at Johnson so that the police would have a "real reason" to arrest him.

¶ 51    Peoples, on the other hand, merely would have testified that he never saw defendant with a firearm during "the night in question." Just because Peoples, however, never saw defendant with a firearm, it does not follow that defendant lacked a firearm. Considering that defendant was a convicted felon, it would have been very foolish of him to ostentatiously display a firearm to the world at large; more likely, he carefully concealed the firearm until he was ready to use it.

¶ 52    Then there is Glover. Judging by her affidavit, she would have testified that defendant had no weapon of any kind the night he was arrested. It is unclear, though, how she knew that. Did she search his person and thereafter keep him under close surveillance throughout the night? Apparently not, considering that, according to her affidavit, she "picked him up and *** dropped him off." Besides, Glover is defendant's wife and probably would be considered to be biased in his favor.

¶ 53    In sum, we do not find prejudice to be even "arguable" in this case (*id.*), and we are unconvinced that a rational defendant would have forgone the mitigating benefit of a guilty plea (see *People v. Bailey*, 364 Ill. App. 3d 404, 409 (2006)) in order to try to meet the State's overwhelming evidence with the marginally probative evidence in Peoples's and Glover's affidavits.

¶ 54                            III. CONCLUSION

¶ 55      For the foregoing reasons, we affirm the trial court's judgment, and we award the State
$50 against defendant in costs.

¶ 56      Affirmed.