2021 IL App (1st) 190795-U

No. 1-19-0795

Order filed April 16, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 10382 |
| | ) | |
| SHAQUAN CARTER, | ) | Honorable |
| | ) | Colleen Hyland, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mary Mikva and Justice Maureen Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: The summary dismissal of defendant's postconviction petition is affirmed where defendant failed to set forth an arguable claim that his plea counsel was ineffective for misinforming him of the terms of his plea agreement, as the record shows that defendant actively participated in the plea hearing and discussed the correct terms of the agreement with the circuit court and plea counsel.

¶ 2    This appeal arises from the summary dismissal of defendant Shaquan Carter's petition for

relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).

On appeal, defendant alleges that the circuit court erred in summarily dismissing his

postconviction petition, where he stated the gist of a constitutional claim that his guilty plea was involuntary because his plea counsel ineffectively misinformed him of the terms of his plea agreement. For the reasons stated below, we affirm the circuit court's summary dismissal.

¶ 3    Defendant was charged by indictment with two counts of home invasion, two counts of armed robbery, three counts of aggravated battery, two counts of aggravated robbery, and one count of reckless discharge of a firearm, following an incident in Oak Lawn on June 7, 2015. Codefendants Torron Hawkins and Latika Martin were included in multiple counts.[1]

¶ 4    On August 18, 2016, a plea hearing was conducted in defendant's presence. The State informed the court that, under the negotiated plea agreement, defendant would plead guilty to one count of aggravated battery with a firearm in exchange for a recommended sentence of 14 years' imprisonment served at 85%. The State would nol-pros the remaining charges.

¶ 5    Defendant's plea counsel told the circuit court that defendant wanted to ask a question. The court stated, "Well, he's represented by you," and then told defendant it was in his "best interest" to discuss his questions with plea counsel, who could then communicate the questions to the court. Plea counsel then told the court that defendant had one "concern," and that counsel told defendant "that 14 years at 85 percent" was calculated to be "11.9 years." The court replied that its role was to impose defendant's sentence, that the Illinois Department of Corrections (IDOC) would calculate defendant's release date, and that if there were "infractions or any other issues, *** good time can be taken away or *** given." The court stated that it could not give "that" to defendant but could impose the requested sentence of "14 years at 85 percent," and there would be a 3-year mandatory supervised release (MSR) term. Defense counsel responded, "That's what I explained."

---

[1] Codefendants Hawkins and Martin do not join in this appeal.

The court then asked defendant if there were "any other issues" that defendant needed to address with his attorney, and plea counsel stated, "No, Judge. That's it."

¶ 6 The court asked defendant whether he pleaded guilty or not guilty, and defendant stated, "Guilty." The court showed defendant his jury waiver form. Defendant confirmed that his signature was on the form, and that he was giving up his right to "any type of trial." Defendant also confirmed that he understood he was giving up the right to see and hear witnesses testify against him, present evidence, cross-examine witnesses, testify on his own behalf or remain silent, and require the State to prove him guilty beyond a reasonable doubt. Defendant then confirmed he understood he was pleading guilty to a Class X felony, that his possible sentence range was 6 to 30 years' imprisonment, that he would serve his sentence at an 85% rate, and that he would be required to serve a 3-year MSR term. The court asked defendant, "Has anyone threatened you or promised you anything to get you to plead guilty other than the recommendation being made to me?" Defendant stated, "No, ma'am." The court then asked defendant if he was pleading guilty of his own free will, and defendant stated that he was.

¶ 7 The State read the stipulated factual basis for the guilty plea, which established that on June 7, 2015, at 1:30 p.m., defendant, Hawkins, and Martin went to the 10200 block of South Pulaski Road in Oak Lawn. Defendant shot Alton Jackson through a closed door, injuring Jackson's hip and bladder. Defendant would be identified in court, and evidence would be presented that the firearm was recovered from Hawkins's vehicle on June 10, 2015.

¶ 8 The court found that defendant understood the nature of the charges against him, the possible penalties, and his "rights under the law"; that the plea was made "freely and voluntarily";

and that there was a sufficient factual basis to support the plea. The court entered judgment on the finding that defendant was guilty of aggravated battery with a firearm.

¶ 9    At sentencing, defendant stated he wanted to read a letter before a sentence was imposed. Defendant stated, "I basically was just letting you know that I accept my punishment even though I was intoxicated, and it was an accident. *** I already signed the 1485 [*sic*]. I was trying to get a lower sentence because of my certificates and things of that nature." The court stated that it "appreciate[d] [defendant's] words," but defendant's negotiations with the State resulted in defendant getting a lower sentence, as defendant's charges would have supported a "much higher sentence." Defendant stated, "Right." The court then stated that if defendant did not proceed with the plea agreement, the State would reinstate the nol-prossed charges against defendant. Defendant again stated, "Right."

¶ 10    The circuit court sentenced defendant to 14 years' imprisonment for one count of aggravated battery with a firearm. The court told defendant that he would receive 434 days' presentence custody credit, that the sentence would be served at 85%, and that defendant would serve a 3-year MSR term. The court informed defendant of his right to appeal within 30 days and stated that before bringing an appeal, defendant must bring a written motion to withdraw his guilty plea and vacate the judgment. The court told defendant that if the motion were allowed, the guilty plea, sentence, and judgment would be vacated, the nol-prossed charges would be reinstated, and a trial would be set. Further, the court stated that anything defendant did not put in the written motion would be forfeited.   Nevertheless, defendant did not file a motion to withdraw his guilty plea, and he did not bring a direct appeal.

¶ 11     On October 18, 2018, defendant filed a *pro se* postconviction petition, alleging that (1) he received ineffective assistance of counsel, as his counsel did not present mitigating evidence at sentencing, and (2) his guilty plea was involuntary, as his plea counsel provided ineffective assistance by misrepresenting the terms of the plea agreement to him. Relevant here, defendant alleged that he entered into a negotiated plea agreement under which he would receive a prison sentence of "11 years, 9 months," but was sentenced to a prison term of "14 years, at 85%." He alleged that plea counsel showed him a document stating he would receive 11 years' imprisonment under the plea agreement, but defendant later learned that counsel had changed "11 years" to "14 years" on the document. Defendant also claimed that counsel told defendant "to respond, 'Yes sir,' to the judge's admonishments" at the plea hearing. Defendant requested that the court "make a finding that counsel's representation denied petitioner of effective assistance of counsel and due process of law."

¶ 12     Defendant attached to his petition a copy of his signed jury waiver, labeled "Exhibit 5." The words "14 yrs IDOC .85% [*sic*]" are handwritten on the document, and additional words between "14 years" and "IDOC" are crossed out several times and made illegible.

¶ 13     Also attached to the petition is defendant's affidavit, which avers in relevant part "that my attorney showed me Exhibit 5 telling me that I would receive 11 years and that he told me prior to coming in front of the judge to say, 'Yes sir,' to whatever the judge asked me." The affidavit further states that "it was only after I received *** Exhibit 5, that I realized that I wasn't fooling myself and that I heard what I heard and it being from [*sic*] my attorney that I was getting and being offered 11 years to plead guilty."

¶ 14    On January 11, 2019, the circuit court entered a written order summarily dismissing defendant's petition as frivolous and patently without merit. The court found, in relevant part that, upon reviewing the record, "no doubt can remain that petitioner's plea was voluntarily made and that he was properly admonished as to the sentence." The court then recounted the lengthy discussion it had with defendant and his plea counsel regarding the terms of the plea agreement, and defendant's affirmation that he understood the terms. The court also stated it would not "second-guess***" plea counsel's strategic decisions regarding the advice given to defendant.

¶ 15    On appeal, defendant argues that the circuit court erred in summarily dismissing his postconviction petition, where he stated the gist of a constitutional claim that his guilty plea was involuntary due to his plea counsel's ineffective assistance in misrepresenting the terms of defendant's plea agreement, telling defendant the sentence was for 11 years when it was for 14 years. The State responds that defendant's ineffective assistance claim was positively rebutted by the record, which showed that defense counsel had discussed the correct plea agreement terms with defendant, and that defendant was informed of the terms of his plea agreement multiple times in open court.

¶ 16    The Act provides a three-stage method for persons under criminal sentence to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). The circuit court summarily dismissed defendant's postconviction petition at the first stage. At the first stage of postconviction proceedings, "[t]he allegations of the petition, taken as true and liberally construed, need only present the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010). This standard presents a "low threshold," and "[a] petitioner need present only a

limited amount of detail and is not required to include legal argument or citation to legal authority." (Internal quotation marks omitted.) *Id.*

¶ 17    The Act authorizes the circuit court to summarily dismiss a petition at the first stage through a written order where "the court determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2010). A postconviction petition is "frivolous or patently without merit" where it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. A petition lacks an arguable basis in law or in fact where it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record," and "[f]anciful factual allegations include those which are fantastic or delusional." *Id.* at 16-17. We review *de novo* the summary dismissal of a postconviction petition. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 18    Under the sixth amendment to the United States Constitution (U.S. Const., amend. VI), a criminal defendant has the right "to effective assistance of trial counsel at all critical stages of the criminal proceedings, including the entry of a guilty plea." *People v. Brown*, 2017 IL 121681, ¶ 25. To prevail on an ineffective assistance claim, a defendant must establish that (1) "counsel's performance was objectively unreasonable under prevailing professional norms," and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). At the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable

that the defendant was prejudiced." (Emphases and internal quotation marks omitted.) *Tate*, 2012 IL 112214, ¶ 19.

¶ 19    An attorney's performance is deficient where "the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Where the defendant has pleaded guilty, the second prong of the *Strickland* analysis requires a showing "'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). While a defendant must satisfy both prongs of the *Strickland* test (*People v. Jackson*, 2020 IL 124112, ¶ 90), we may resolve an ineffective assistance claim based on the prejudice prong without deciding whether counsel's performance was deficient, if the defendant suffered no prejudice as a result of the allegedly defective performance (*People v. Pulliam*, 206 Ill. 2d 218, 249 (2002)).

¶ 20    Defendant here raised a claim that the ineffective assistance of his plea counsel caused him to enter an involuntary guilty plea. "[T]he plea-bargaining process, and negotiated plea agreements, are vital to, and highly desirable for, our criminal justice system," and plea bargaining is to be encouraged when properly administered. *People v. Donelson*, 2013 IL 113603, ¶ 18. "In order to satisfy due process, a guilty plea must be affirmatively shown to have been made voluntarily and intelligently." *People v. Fuller*, 205 Ill. 2d 308, 322 (2002). Further, "due process requires that in order for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 35. "It is well settled that a defendant's acknowledgement in open court, at a plea hearing, that there were no agreements or promises regarding his plea serves to contradict a postconviction assertion

that he pled guilty in reliance upon an alleged, undisclosed promise by defense counsel regarding sentencing." *People v. Torres*, 228 Ill. 2d 382, 396-97 (2008).

¶ 21 As an initial matter, defendant acknowledges he did not file a written motion to withdraw his guilty plea pursuant to Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016) ("No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court ***if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment."). He argues, however, that he may still challenge the voluntariness of his guilty plea in a postconviction petition even though he did not file a motion to withdraw his plea because Rule 604(d) "does not apply in post-conviction proceedings" (*People v. Miranda*, 329 Ill. App. 3d 837, 841 (2002)).

¶ 22 As our supreme court explained in *People v. Flowers*, 208 Ill. 2d 291 (2003), where a defendant has failed to file a written Rule 604(d) motion to withdraw his guilty plea, the appellate court cannot consider the merits of the appeal and must dismiss it, "leaving the Post-Conviction Hearing Act as the defendant's only recourse." *Flowers*, 208 Ill. 2d at 301, *as modified on denial of reh'g* (Jan. 26, 2004). Appellate courts have been split as to whether forfeiture under Rule 604(d) applies to postconviction proceedings. While some courts have found that the rule of forfeiture under Rule 604(d) is not relaxed in the postconviction setting (*People v. Vilces*, 321 Ill. App. 3d 937, 941-42 (2001) ("a defendant challenging the voluntariness of his guilty plea waives the issue in a postconviction proceeding if he could have raised it, but did not, in a motion to withdraw his plea or in a direct appeal"), others have found Rule 604(d) forfeiture has no application to postconviction proceedings (*Miranda*, 329 Ill. App. 3d at 841; *People v. Stein*, 255 Ill. App. 3d

847, 848 (1993)). As this issue remains unsettled, we will not address it here and instead will move forward to the gist or lack thereof of defendant's petition.

¶ 23 Specifically, we find defendant's postconviction petition does not state the gist of a constitutional claim that his plea was involuntary due to the ineffective assistance of his counsel. Even if, as defendant claims, counsel did incorrectly inform him that the plea offer was 11 years rather than 14 years, we find defendant suffered no arguable prejudice from the misstatement. See *People v. Gray*, 2012 IL App (4th) 110455, ¶¶ 50-53 (affirming summary dismissal of the defendant's ineffective assistance claim regarding his guilty plea, where the defendant failed to show he was arguably prejudiced). The court affirmed the 14 years with defendant prior to accepting the plea, thus offering an opportunity to reject the plea if it was not what he agreed to.

¶ 24 At the guilty plea hearing, the State informed the circuit court, in defendant's presence, that the plea offer was 14 years, to be served at 85%. Defendant's plea counsel then told the court that defendant had a question about his sentence, and, on defendant's behalf, recounted telling defendant about the calculation of his sentence, namely, that "14 years at 85 percent *** is 11.9 years." The court replied that it was IDOC's role to calculate defendant's release date, and the court could not impose "that," *i.e.*, an 11.9-year sentence (14 years at 85% equals 11.9 years), only the requested sentence of 14 years' imprisonment at 85% with a 3-year mandatory supervised release period. Plea counsel stated, "That's what I explained." The court then confirmed with defendant and his attorney that there were no other issues defendant wished to address through his counsel. Defendant subsequently acknowledged he "signed the 1485 [*sic*]," an apparent reference to the jury waiver with "14 years IDOC .85" written on it and tried to persuade the judge to reduce

his sentence given his "certificates and things." He accepted the court's explanation that he was already getting a lower sentence as a result of his negotiations with the State.

¶ 25    The record shows not only that defendant was informed three times during the plea hearing that the plea agreement was for 14 years to be served at 85%, but that he clearly understood the agreement would be for 14 years. After the State announced the 14-year offer, defendant questioned the court, through counsel, regarding counsel's 11.9 years calculation, and had no further questions after the court clarified it only could impose the 14-year sentence. He subsequently conceded that he signed the "1485," and accepted the court's explanation that he was already getting a lower sentence given the charges. Accordingly, even if, as defendant claims, plea counsel initially caused defendant to think the plea offer was for 11 years by writing something to that effect on the jury waiver, he clearly understood the sentence would be 14 years at 85% when he accepted the plea offer. Defendant was, therefore, not prejudiced by counsel's initial statement that the sentence would be 11 years. Defendant did not, as he argues on appeal, "accept*** a longer prison term than he knew he was accepting." The record overwhelmingly rebuts his assertion that his agreement to the 14-year sentence was involuntary. *People v. Resendiz*, 2020 IL App (1st) 180821, ¶ 22 (during first-stage postconviction proceedings, well-pleaded allegations in the petition are taken true unless positively rebutted by the trial record).

¶ 26    Defendant claimed in his petition that he had only passively and robotically cooperated during the court's admonishments in accordance with his plea counsel's advice to answer "yes, sir" to everything the court asked him. However, the record shows that defendant was an active participant in the proceedings, where he actively sought to confirm the terms of the agreement with the circuit court and later presented the court with a letter and argument raising reasons for a

lower sentence. See *People v. Rissley*, 206 Ill. 2d 403, 461-62 (2003) (rejecting the defendant's argument that he did not understand his plea proceedings and only passively "mimick[ed] signals given to him from [plea counsel]," where the record showed the defendant actively participated in the plea hearing).

¶ 27     Defendant argues the circuit court failed to substantially comply with the requirements of Illinois Supreme Court Rule 402(b) (eff. July 1, 2012), when, in order to determine whether defendant's plea was voluntary, it confirmed with counsel, rather than with defendant "personally," the terms of the plea agreement.[2] See Il. S. Ct. 402(b) (the circuit court "by questioning the defendant personally in open court, shall confirm the terms of the plea agreement"). However, as the State observes, even reading defendant's petition liberally as we must, defendant did not raise any claim in his petition regarding the court's failure to comply with Rule 402(b). Therefore, his challenge to the circuit court's compliance with Rule 402 cannot be raised for the first time on appeal. See *People v. Pendleton*, 223 Ill. 2d 458, 474-75 (2006) (finding the defendant could not challenge the circuit court's admonishments during a plea hearing for the first time on appeal, where the defendant's petition contained "no reference to an admonishment issue").

¶ 28     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 29     Affirmed.

---

[2] "The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." Il. S. Ct. 402(b) (eff. July 1, 2012).